**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

BEN & JERRY'S HOMEMADE, INC.

               Plaintiff,

    – against –

CONOPCO, INC.,

               Defendant.

---------------------------------------------------------------x

Case No.:

**DECLARATION OF JENNIFER HENDERSON IN SUPPORT OF PLAINTIFF'S
MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER**

I, Jennifer Henderson, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      This declaration is based upon my personal knowledge of the facts stated herein.

2.      I am an independent director of the Board of Directors ("Board") of Ben & Jerry's Homemade, Inc ("Ben & Jerry's" or "the Company"). I have been a Board member since 1996. I am not employed by Ben & Jerry's.

**Ben & Jerry's Social Mission**

3.      I have more than 40 years of experience working in the areas of community economic development, urban and rural public policy advocacy, and social enterprises. I currently own and manage a consulting firm that focuses on organizational management and leadership development, specifically advising organizations on acquiring and developing tools to advance progressive social change. Before starting my consulting firm, I spent 10 years leading a statewide grassroots advocacy organization in North Carolina,

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

and 15 years as the Director of Training and Leadership Development at the Center for Community Change in Washington, DC.

4.      I met Ben Cohen and Jerry Greenfield, the co-founders of Ben & Jerry's, because of our shared interests in social activism, and my admiration for Ben & Jerry's social advocacy.  In 1988, with the agreement of my employer, the Center for Community Change, I began working with Ben & Jerry's as a consultant on organizing and advocacy in support of progressive issues. I also provided counsel on internal organizational, governance and leadership challenges. I helped Ben & Jerry's "One Percent for Peace" campaign advocating for the redirection of 1% of the U.S. military budget to peace-promoting activities.   Based on my own professional experience, I respected the Company's commitment to use the success of Ben & Jerry's as a vehicle for social justice. Mr. Cohen and Mr. Greenfield subsequently asked me to help orient the mission of the Ben & Jerry's Foundation, which funds organizations in Vermont and around the country that advance progressive social change.  After working with the Ben & Jerry's Foundation for several years on that and a number of other initiatives, I was nominated to the Ben & Jerry's Board of Directors in 1996.

5.      I was particularly impressed and drawn to join the Ben & Jerry's Board by its view of the business as an engine for social change, and its three-part mission:  a Product Mission, to make the finest-quality ice cream; an Economic Mission, to manage the business sustainably and profitably; and a Social Mission, to operate the Company in innovative ways that improve the quality of life of people around the world.  The Company refers to this three-part mission as its "triple bottom line."  All three missions are equally important to measuring and maintaining Ben & Jerry's success as a business.

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

6.      The Company's holistic, three-part mission is rooted in the Company's core value of "linked prosperity," a belief that the Company has an obligation to share the prosperity of its business with its stakeholders.

### The Sale of Ben & Jerry's to Unilever and Preservation of an Independent Ben & Jerry's Board

7.      In 1999, Unilever and other interested parties approached Ben & Jerry's about buying the Company.  Ben & Jerry's management advocated for a sale of the Company as a necessary step for the Company to grow.  Some of the Directors, including me, however, were concerned that a sale of the Company would hinder its ability to adhere to the pursuit of its Social Mission.  Many of us believed the Company was unlikely to find a prospective buyer that:  (1) would have sufficient resources to offer an attractive bid; and (2) shared the same core values and commitment to social progress and justice as Ben & Jerry's.  Those of us who shared these concerns thought it was vitally important to preserve Ben & Jerry's Social Mission and the integrity of the brand.

8.      I participated in negotiations with Unilever.  I was pleased with Unilever's expressed understanding of the importance of the integrity of the Ben & Jerry's brand, and Unilever's stated appreciation of Ben & Jerry's Social Mission.   Unilever representatives expressly represented Unilever was willing to preserve Ben & Jerry's as a separate company.  The Ben & Jerry's Board insisted that any sale would have to be conditioned on a special corporate governance structure that would preserve an independent Ben & Jerry's Board of Directors, which would remain responsible for Ben & Jerry's historical Social Mission, protect the integrity of the brand, and retain the authority to negate any proposed management action that would adversely affect the Social Mission or the integrity of the Ben and Jerry's brand.

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

9.     The negotiations between Ben & Jerry's and Unilever lasted months, and a substantial amount of time was spent on specific corporate governance matters. Throughout the lengthy negotiations, Board members participated in all aspects of the discussions with Unilever. The entire Board was engaged in the final vote approving the Agreement and Plan of Merger. The parties specifically negotiated who would retain ultimate responsibility for the preservation of the social integrity of the brand and finally expressly agreed that an independent Board of Directors would retain the authority to protect and expand Ben & Jerry's Social Mission and protect the integrity of the Ben & Jerry's brand.

10.    The parties' specific intent is expressed in the Agreement and Plan of Merger dated April 11, 2000, which provided the Ben & Jerry's Board with ultimate responsibility and decision-making authority for preserving and enhancing the objectives of the historical social mission of the Company.

11.    In addition, under the Agreement and Plan of Merger, the Ben & Jerry's Board was made custodian of the Ben & Jerry's brand image and retained legal authority to safeguard the integrity of the essential elements of Ben & Jerry's brand.  Indeed, under the negotiated terms of the Agreement and Plan of Merger, in the event the Ben and Jerry's Board determines an action by the chief executive officer might adversely affect the licensing or other use of the Ben & Jerry's trademark in a way that is inconsistent with the integrity of the brand, the Board of Ben & Jerry's is expressly authorized  to terminate such action.  These provisions were heavily negotiated and critical to the Company's acceptance of Unilever's bid.  Without these provisions, no merger would have occurred.

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

**Unilever and Ben & Jerry's Move Forward Under the Agreement**

12.     I remained on the Board after the sale to Unilever and am now the longest serving Ben & Jerry's Board member.  I am also the only remaining Board member who participated in the negotiations with Unilever on the Agreement and Plan of Merger.

13.     The deal Ben & Jerry's struck with Unilever has been extremely successful for more than two decades.  Because of the unique structure the parties agreed to, there have been occasional periods of tension between Ben & Jerry's Board and Unilever.

14.     Since the sale of Ben & Jerry's to Unilever, occasional disagreements between Unilever and Ben & Jerry's have arisen, but in each case, those disagreements were resolved according to the terms of the parties' agreement as expressed in the Agreement and Plan of Merger.  For instance, in 2008, the Ben & Jerry's chief executive officer proposed to close the Ben & Jerry's plant in Waterbury, Vermont – the Company's first factory, built in 1985.  The closure of that plant would have led to employee layoffs and would likely have depressed the local economy.  The Board determined that the planned closing of the Waterbury plant was inconsistent with the Company's Social Mission and expressed its objection to Unilever.  Unilever respected the Board's judgment and its ability under the Agreement and Plan of Merger to prevent the closure.  As a result, the Waterbury plant continues to operate and it is now one of the Company's most efficient plants.

15.     Unilever likewise on occasion has expressed discomfort to the Board regarding the Company's positions on some social issues; however, in each instance, it did not challenge the Board's Social Mission or object to the Board's position on a particular social issue.  On the contrary, since the sale of Ben & Jerry's to Unilever, the Company

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

has taken positions and actions in connection with a number of high-profile, and sometimes controversial, topics.  For example, in 2011, the Ben & Jerry's Board issued a statement of solidarity with the Occupy Wall Street movement.  In 2020, in the aftermath of the murder of George Floyd, the Ben & Jerry's Board issued a forceful statement on behalf of the Company titled "We Must Dismantle White Supremacy."  In January 2021, the Company denounced the actions of the January 6 capitol rioters.  Those statements and actions all occurred many years after Unilever acquired Ben & Jerry's, and they were possible only because of the unique corporate governance provisions that were negotiated in the Agreement and Plan of Merger.

**The Board's Determination to Cease Sales in the Occupied Palestinian Territory**

16.     The Board's recent decision to cease sales of Ben & Jerry's ice cream in the Occupied Palestinian Territory ("OPT") is yet another demonstration of the Company's long-time commitment to its Social Mission.  For several years, the Board had been hearing concerns from our stakeholders over the sale of our products in the OPT, and that it was inconsistent with the Company's Social Mission and the integrity of the Ben & Jerry's brand.

17.     Between 2000 and 2021, the Board determined that the sale of Ben & Jerry's ice cream in the Occupied Palestinian Territory ("OPT") was contrary to the historical Social Mission of the Company and inconsistent with the Ben & Jerry's brand integrity.  We therefore directed the Company's management to cease sales of Ben & Jerry's ice cream in the OPT after an underlying license agreement had expired.

18.     That decision was not taken lightly; rather, the Board carefully deliberated that decision and discussed it with Unilever.  In a public statement, Unilever even

6

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

acknowledged that Ben & Jerry's Board had the authority to make that determination and likewise the authority to instruct Unilever to cease sales of Ben & Jerry's ice cream in the OPT.

19.     I declare under penalty of perjury that the foregoing is true and correct.

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

Executed on:   July 4, 2022
　　　　　　　　Henderson, Nevada

*Jennifer Henderson*

　　Jennifer Henderson

Doc ID: 4a3f8931aee0ae1140736890c86a23f62164d0f6

 **HELLOSIGN**

Audit Trail

| | |
|---|---|
| **TITLE** | Declaration of J. Henderson 4890-8681-7575 v.1 (EXECUTION... |
| **FILE NAME** | Declaration%20of%...ION%20COPY%29.pdf |
| **DOCUMENT ID** | 4a3f8931aee0ae1140736890c86a23f62164d0f6 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| **SENT** | **07 / 04 / 2022**<br>19:26:58 UTC | Sent for signature to Jennifer Henderson (jenniferhendersonstrategy@gmail.com) from raees@rmwarnerlaw.com<br>IP: 70.190.28.232 |
| **VIEWED** | **07 / 04 / 2022**<br>19:27:11 UTC | Viewed by Jennifer Henderson (jenniferhendersonstrategy@gmail.com)<br>IP: 184.186.112.177 |
| **SIGNED** | **07 / 04 / 2022**<br>19:27:39 UTC | Signed by Jennifer Henderson (jenniferhendersonstrategy@gmail.com)<br>IP: 184.186.112.177 |
| **COMPLETED** | **07 / 04 / 2022**<br>19:27:39 UTC | The document has been completed. |