UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEN & JERRY'S HOMEMADE, INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>CONOPCO, INC.,<br><br>                    Defendant. | Case No. 1:22-cv-05681 (ALC) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

**COHEN & GRESSER LLP**
Mark S. Cohen
Jeffrey I. Lang
Drew S. Dean
800 Third Avenue, 21st Floor
New York, New York 10022
Telephone: (212) 957-7600
Facsimile: (212) 957-4514

**AHMAD, ZAVITSANOS & MENSING PC**
Shahmeer Halepota
John Zavitsanos (*pro hac vice* pending)
Joseph Y. Ahmad
Jane Robinson (*pro hac vice* to be filed)
Daryl Moore (*pro hac vice*)
Kelsi White (*pro hac vice* to be filed)
Thomas Frashier (*pro hac vice*)
1221 McKinney, Suite 2500
Houston, Texas 77010
Phone:  (713) 655-1101
Fax:  (713) 655-0062

*Attorneys for Plaintiff Ben & Jerry's Homemade, Inc.*

## **TABLE OF CONTENTS**

                                                                                                                                         **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

       I.      Conopco's Mootness Argument Ignores Its Continuing Obligations Under the Transaction. .................................................................................................... 1

              A.   This Court has the Equitable Power to Preserve the *Status Quo*. ........................... 1

              B.   Conopco's Mootness Claims Are Undercut by its Continuing Obligations under the Transaction. ........................................................................................... 2

              C.   A Mootness Determination Would Nullify the Parties' Carefully Negotiated Merger Agreement. ................................................................................................ 3

      II.     The Proper Parties Are Before This Court for Entry of Injunctive Relief. ............. 3

              A.   The Sole Necessary Party for Injunctive Relief is Defendant Conopco, Inc. .......... 3

              B.   Ben & Jerry's Independent Board Can Sue to Enforce its Rights under the Agreements. ........................................................................................................... 4

      III.    Plaintiff is Likely to Succeed on the Merits of Its Breach of Contract Claims. .................................................................................................................... 5

              A.   The Merger Agreement Expressly Provides the Independent Board with "Primary Responsibility" for "Safeguarding" Ben & Jerry's Brand Integrity, Which the Transaction Directly Implicates. ........................................... 5

      IV.    Plaintiff Will Be Irreparably Harmed in the Absence of Injunctive Relief. ............ 8

      V.     The Balance of the Equities and the Public Interest Favor Injunctive Relief. ....... 10

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Founders Holding, LLC v. Magellan Health, Inc.*,
  2018 WL 1247405 (E.D.N.Y. Mar. 9, 2018)..................................................................................4

*Boat Basin Invs., LLC v. First Am. Stock Transfer, Inc.*,
  No. 03 CIV. 493 (RWS), 2003 WL 282144 (S.D.N.Y. Feb. 7, 2003).......................................4

*Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*,
  794 F.2d 38 (2d Cir. 1986)..........................................................................................................9

*Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*,
  551 U.S. 449 (2007)....................................................................................................................3

*In re: Residential Cap., LLC*,
  533 B.R. 379 (Bankr. S.D.N.Y. 2015)........................................................................................7

*Millennial Plastic Surgery PLLC v. James*,
  No. 21 CIV. 9590 (ER), 2021 WL 5988322 (S.D.N.Y. Dec. 16, 2021)....................................9

*Ramah Navajo Sch. Bd. v. Babbitt*,
  87 F.3d 1338 (D.C. Cir. 1996)....................................................................................................4

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004)........................................................................................................9

*Sunset Homeowners Ass'n, Inc. v. DiFrancesco*,
  386 F. Supp. 3d 299 (W.D.N.Y. 2019).......................................................................................4

*TMT Co. Ltd. v. JPMorgan Chase Bank*,
  2018 WL 1779378 (S.D.N.Y. Mar. 28, 2018)............................................................................4

**Rules**

Fed. R. Civ. P. 19(a)(1)....................................................................................................................4

Fed. R. Civ. P. 65(d)(2)....................................................................................................................4

## PRELIMINARY STATEMENT

For 18 months, Defendant Conopco, Inc. ("Conopco") and Ben & Jerry's negotiated their Merger Agreement, including its cornerstone: Section 6.14. Conopco's attempts to circumvent the parties' 22-year-old agreement—via an unauthorized sale to a third party ("the Transaction")—should be enjoined. Equity favors preserving the social integrity Ben & Jerry's has built across four decades over Defendant's professed concerns regarding its stock price. Absent an injunction, no aspect of the Ben & Jerry's brand is safe from purge for purposes of political or economic expediency.[1]

## ARGUMENT

**I.      Conopco's Mootness Argument Ignores Its Continuing Obligations Under the Transaction.**

   **A.      This Court has the Equitable Power to Preserve the *Status Quo*.**

Conopco suggests that because the Transaction allegedly closed on June 29, 2022, the Independent Board's request for relief is moot and would disturb the *status quo*. (Opp. at 8). However, Conopco misunderstands the nature of the *status quo* to be preserved. Ben & Jerry's seeks a preliminary injunction that would preserve the *status quo* by enjoining Conopco and anyone acting in concert with Conopco from taking any action in furtherance of or in connection with the Business Transfer Agreement ("BTA") pending the Court's determination of the merits of Ben & Jerry's claims on a complete evidentiary record.

---

[1] All references to "Brief" and "Br." refer to the opening Mem. of Law in Support of Plaintiff Ben & Jerry's Application for Preliminary Injunctive Relief (Dkt. No. 9). "Opposition" and "Opp." refer to Conopco's Mem. of Law in Opp. to Ben & Jerry's Application for Preliminary Injunctive (Dkt. No. 30). All other capitalized terms have the same meaning as used in the Brief unless otherwise indicated.

### B. Conopco's Mootness Claims Are Undercut by its Continuing Obligations under the Transaction.

Conopco's mootness argument ignores the BTA's continuing and future obligations, which undoubtedly require Conopco's involvement. Although Conopco suggests that the BTA was undertaken exclusively by Unilever, the BTA itself – which was first disclosed to the Board in Conopco's Opposition – expressly defines Ben & Jerry's as a Seller. (Dkt 34-2 § 6.05(b)(xxiv)). And in several provisions of the BTA, Unilever agrees to "cause" the Sellers to take actions to effect the sale. (*Id.* Recitals; § 1.01(a); § 2.03(a)). The chain of authority for Unilever to "cause" Ben & Jerry's to take action necessarily runs through its wholly-owned subsidiary, Conopco, the sole shareholder of Ben & Jerry's.

In particular, Unilever and its affiliates (which would include Ben & Jerry's) have ongoing obligations under the BTA to provide Mr. Zinger with formulas and knowhow, among other things.[2] That obligation will require Conopco to act. Although the Merger Agreement and the Shareholders Agreement specifically delegate "new product introduction" and "product standards and specifications" to the Independent Board (Dkt. 36-1 § 6.14(f); Dkt. 36-3 § 1(f)), Mr. Zinger has already publicly bragged about his ability to "make whatever flavor I want."[3] Conopco's outstanding obligations under the Transaction—squarely covering matters under the Independent Board's purview—demonstrate that this dispute is far from moot.

---

[2] Declaration of Shahmeer Halepota ("Halepota Decl."), Exh. 1, "Meet the Israeli Who Wants to Rename Ben & Jerry's Chunky Monkey 'Judea and Samaria,'" Haaretz. Available at: https://www.haaretz.com/israel-news/2022-07-06/ty-article-magazine/.highlight/meet-the-israeli-who-wants-to-rename-chunky-monkey-to-judea-and-samaria/00000181-d27b-df27-a7b7-da7f9f110000. ("The deal also states I can receive from them the knowhow, formulas and option to purchase raw materials from their suppliers—if I want."); *see also* Dkt. 34-2 § 5.10(d).
[3] Halepota Decl., Exh. 1.

### C. A Mootness Determination Would Nullify the Parties' Carefully Negotiated Merger Agreement.

It is well-established that disputes that are "capable of repetition, yet evading review" are an exception to the mootness doctrine. *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007).[4] If the relief sought here were deemed moot, the Board's exhaustively negotiated rights in the Merger Agreement and Shareholders Agreement would be rendered a nullity, as Conopco could bypass the Board's authority by simply keeping the Board in the dark and acting before the Board has the chance to assert its rights. Indeed, Conopco openly admits that it adopted that playbook here, giving the Board only *four days*' notice of the Transaction (*see* Opp. at 19) despite Defendant's previous statement that it has "*always recognised* the right of the brand and its independent Board to take decisions about its social missions." (Opp. at 16). According to Conopco, a critical right can be rendered moot in four days of surreptitious activity. Equity does not sanction such a result.

## II. The Proper Parties Are Before This Court for Entry of Injunctive Relief.

### A. The Sole Necessary Party for Injunctive Relief is Defendant Conopco, Inc.

Conopco's suggestion that Unilever IP Holdings B.V. ("UIP"), Avi Zinger, and Blue & White Ice-Cream Ltd. ("Blue & White") are necessary parties is wrong; only Defendant Conopco's presence is required for entry of the relief sought. In fact, Conopco's own briefing unintentionally concedes that: "Under the plain language of the Agreements, the right to sell assets, especially a very limited set of assets, applicable to a narrow region of the world, **belongs exclusively to Conopco** . . . ." (Dkt. 30 at 25-26).

---

[4] The exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id*. (citation omitted.) Here, both prongs are met. First, *assuming arguendo* that Conopco were correct that its actions had totally ceased, the Independent Board only had four days' notice that Unilever was going to execute the Transaction against its wishes. Second, based on Conopco's actions in this case, there is a reasonable expectation that Conopco will continue to act in violation of the Independent Board's authority, especially if there are no consequences for doing so.

3

Unilever, Zinger, and Blue & White are not parties to the Merger Agreement or the Shareholders Agreement, which are the agreements at issue in this action. Ben & Jerry's has sued for relief for Conopco's breach of the Merger and Shareholders Agreements and seeks a determination of the parties' rights under those agreements.[5] By its Application, Ben & Jerry's therefore seeks only to preserve the *status quo* ***as between Ben & Jerry's and Conopco*** by enjoining Conopco—and "persons who are in active concert or participation with [it]"—from taking any action in further breach of the Merger Agreement or Shareholders Agreement, pending the Court's resolution of Ben & Jerry's claims on a complete evidentiary record. *See* Fed. R. Civ. P. 65(d)(2).[6] The relief requested by this Application will neither resolve nor impair any rights and interests that Unilever, Zinger, and Blue & White may have under other agreements.[7] *See* Fed. R. Civ. P. 19(a)(1).

### B. Ben & Jerry's Independent Board Can Sue to Enforce its Rights under the Agreements.

Conopco's cursory argument that the Ben & Jerry's Independent Board did not have authority to pursue litigation via a Special Committee ignores that the full Board of Directors

---

[5] Conopco relies on cases holding that when a contract is challenged, the parties to that contract are necessary parties. See *Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, 386 F. Supp. 3d 299, 304 (W.D.N.Y. 2019); *Boat Basin Invs., LLC v. First Am. Stock Transfer, Inc.*, No. 03 CIV. 493 (RWS), 2003 WL 282144, at *10 (S.D.N.Y. Feb. 7, 2003). And in *TMT Co. Ltd., v. JPMorgan Chase Bank*, 2018 WL 1779378, at *3 (S.D.N.Y. Mar. 28, 2018) the Court rejected a motion to dismiss for failure to join a necessary party on grounds applicable here: "the Complaint is not about RBS's conduct but rather the alleged acts of JPMorgan and the extent to which JPMorgan profited or benefitted from the transfer of what TMT alleges to be its funds into JPMorgan accounts."

[6] To the extent that Unilever, the beneficial owner of Conopco, is working in concert with Conopco, then it, and anyone working in concert with Conopco, would fall within the scope of a preliminary injunction under Rule 65(d)(2).

[7] Moreover, even if, solely for the sale of argument, the superfluous parties had some interest at stake in this action, their interests would be adequately represented by Conopco, a wholly-owned subsidiary of Unilever. As explained by the court in *Alpha Founders Holding, LLC v. Magellan Health, Inc.*, 2018 WL 1247405, at *6 (E.D.N.Y. Mar. 9, 2018), which is cited in Conopco's Opposition:  "Even assuming that AlphaCare Holdings, Inc. does have an interest in this litigation, its interests are adequately represented by Plaintiff and Defendant, who are the only shareholders of AlphaCare Holdings." *See also id.* at *9 ("Although SWH NY is one of the parties who will execute the merger agreement, it is Defendant's wholly owned subsidiary. Therefore, it is united in interest with Defendant, and the Court finds that its interests are adequately represented by Defendant, making its joinder not necessary"); *Ramah Navajo Sch. Bd. v. Babbitt*, 87 F.3d 1338, 1351 (D.C. Cir. 1996) ("If the nonparties' interests are adequately represented by an existing party, the suit will not impede or impair the nonparties' interests, and therefore the nonparties will not be considered 'necessary'").

voted on the authorization to commence this action, separate and apart from its appointment of a Special Committee.[8] And Ben & Jerry's has express authority to enforce the rights of the Board under the Shareholders Agreement, in which the parties consented to the jurisdiction of this Court, and agreed that in the event of a breach, the aggrieved party would be entitled to injunctive relief.[9]

Conopco's primary, secondary, and tertiary arguments—that an unauthorized sale on four-days' notice ("mootness") to third parties the Independent Board has previously rejected ("necessary parties") cannot be challenged by the Independent Board ("no right to sue")—are all designed to distract from the language in Section 6.14 of the Merger Agreement and Section 1 of the Shareholders Agreement.

### III. Plaintiff is Likely to Succeed on the Merits of Its Breach of Contract Claims.

#### A. The Merger Agreement Expressly Provides the Independent Board with "Primary Responsibility" for "Safeguarding" Ben & Jerry's Brand Integrity, Which the Transaction Directly Implicates.

Conopco suggests it had the unqualified right to enter into the Transaction because the Merger Agreement provides it with purportedly unchecked "financial and operational" authority. Yet as explained below, Conopco's "financial and operational" authority is far from absolute—indeed, the very purpose of the Merger Agreement was to divide control between Conopco and the Independent Board. (Dkt. 36-1 at 7).[10] Specifically, Sections 6.14(e) and (f) provide the Independent Board with "primary responsibility" over Ben & Jerry's Social Mission and brand

---

[8] In its July 1, 2022 Board resolution, the Board resolved that the "Board of Directors of the Company, or a committee thereof, is authorized to commence an adversarial litigation." See Dkt. 1., Exh. J.

[9] Under Section 7 of the Shareholders Agreement, which delineates corporate power between the Conopco and the Board, in the event of a breach, "the parties shall be entitled to an injunction or injunctions to prevent breaches of this Agreement and to enforce specifically the terms and provisions of this Agreement in any New York state court or any Federal court located in the State of New York." Substantially similar language appears in Section 9.10 of the Merger Agreement.

[10] "WHEREAS Conopco believes that it is uniquely positioned to further the Company's **three-part mission** through a business combination that leverages the strengths of **both Conopco and the Company**." (emphasis added).

integrity. (Dkt. 36-1 §§ 6.14(e),(f)). And the same provisions expressly resolve conflicts between Conopco's "financial and operational" authority and the Independent Board's brand and Social Mission authority *in the Board's favor*, empowering the Independent Board to "prevent" corporate action that the Board determines is detrimental to Ben & Jerry's brand integrity. (Dkt. 36-1 § 6.14(f)).

> **i.  Conopco's "Financial and Operational" Authority is Expressly Checked by the Independent Board's Authority over the Brand's Integrity and Social Mission.**

Section 6.14, titled "Operations of the Surviving Corporation," is the heart of the Merger Agreement (and the Shareholders Agreement), as it allocates control over Ben & Jerry's between Conopco and the Independent Board. In doing so, Section 6.14 allocates financial and operational authority to the CEO, an appointee of Conopco.  Section 6.14, however, also included several specific carveouts to preserve the Independent Board's autonomy to protect Ben & Jerry's brand integrity. These are the same carveouts the parties spent months negotiating and without which, the deal would not have been consummated.  (*See* Dkt. 10 (Cohen Decl.) ¶¶ 8, 11-12).

Specifically, while Section 6.14(j) provides Conopco "primary responsibility for the financial and operational" aspects of Ben & Jerry's, that same provision also expressly limits Conopco's control to "aspects of the Surviving Corporation not allocated to the Company Board pursuant to [] Section 6.14." (Dkt. 36-1 § 6.14(j)). Likewise, Section 6.14(d) provides that Ben & Jerry's "shall be managed by the CEO," but that clause is "[*s*]*ubject to* Sections 6.14(e) and 6.14(f)[.]" (Dkt. 36-1 § 6.14(d)).  And Sections 6.14(e) and (f) ***explicitly*** provide the Independent Board with "primary responsibility" over the Ben & Jerry's Social Mission and brand integrity.

6

(Dkt. 36-1 §§ 6.14(e), (f)). The Shareholders Agreement, the operative agreement on governance, adopts the delineation of authority provided in the Merger Agreement.

In other words, the plain language of the Merger Agreement provides that Section 6.14 is a general delegation of authority to Conopco (through the CEO)[11], with specific reservations of authority expressly carved out for the Independent Board. The only reasonable interpretation of the Merger Agreement as a whole is to read that where Section 6.14 allocates authority to the Independent Board, the Independent Board's power is a specific and predominant limitation on the authority delegated to Conopco. *See In re: Residential Cap., LLC*, 533 B.R. 379, 399 (Bankr., S.D.N.Y. 2015) (noting that under New York law, "specific terms in contract will override the general, including when the specific and general provisions appear to conflict.") Defendant's own actions—including its public announcement that it has "always recognised the right of the brand and its independent Board to take decisions about its social missions"[12] and amending the license agreement to remove the West Bank from the definition of "territory"[13]— confirm the Independent Board's authority."

This primacy of the Board's authority finds further support in Sections 6.14(e) and (i) of the Merger Agreement. Section 6.14(e) states that, notwithstanding the authority delegated to Conopco, the Independent Board may affirmatively "prevent" actions which could damage Ben

---

[11] Conopco suggests that the Independent Board has no authority in regard to the Transaction because it was undertaken by Conopco, not the Ben & Jerry's CEO (a Conopco appointee). (*See* Dkt. 30 at 26). However, Section 6.14(d) of the Merger Agreement expressly imputes Conopco's management over Ben and Jerry's to the Company's CEO: the Surviving Corporation "shall be managed by the CEO." (*See* Dkt. 36-1 §6.14(f)). The Shareholder Agreement contains mirror language. (*See* Dkt. 36-3 §1.(d)). Indeed, Conopco admits that the contractual authority it relies on to justify the Transaction is an exhibit titled: "Delegation of Authority *to [the] CEO*." *See* Dkt. 30 at 25, However, the list of powers in that delegation exhibit is not one-sided. Rather, it is a list of *shared* powers between Conopco "and the Company Board" and the "allocation of responsibility" between those powers—*including asset sales*—is "as provided in Section 6.14." (Dkt. 36-1 at Ex. B "Form of Delegation of Authority"). By making Exhibit B expressly subject to section 6.14, the parties clearly demonstrated their intent that where Section 6.14 allocated control to the Independent Board, the Independent Board's control would predominate.
[12] Opp. at 16 (emphasis added)
[13] Opp. at 14.

& Jerry's brand integrity. And Section 6.14(i) provides that Conopco cannot "prevent the Surviving Corporation from fulfilling its obligations under [] Section 6.14." (Dkt. 36-1 § 6.14(i)). Section 6.14(i) language establishes that where the Independent Board exercises its control under Section 6.14, Conopco is prohibited from interfering with that exercise. Section 6.14(i) thus confirms the overall post-acquisition governance structure contemplated by the Merger Agreement:  the Board's express powers are superior to Conopco's general authority over financial and operational matters. The Shareholders Agreement includes these provisions.

In summary, the Merger Agreement and Shareholders Agreement expressly contemplate and permit that the Independent Board's exercise of its specific control may curtail portions of Conopco's general "financial and operational" control. Because it is impossible for a company to take *any* action without implicating certain financial and operational aspects, the only manner to preserve the Ben & Jerry's social mission and brand integrity was to define times when those values must predominate. For these reasons, the Independent Board's specific authority under Sections 6.14(e) or 6.14(f) of the Merger Agreement, and Sections 1(e) and 1(f) of the Shareholders Agreement, will control over Conopco's general delegation of financial and operational authority.[14]

## IV. Plaintiff Will Be Irreparably Harmed in the Absence of Injunctive Relief.

Conopco offers three arguments why Ben & Jerry's would not be irreparably harmed without an injunction; each fails in the face of the Company's four-decade long Social Mission. First, Conopco brazenly argues no harm, no foul because "the Asset Sale has already occurred."[15]  The Company has only recently been provided with a copy of the BTA, but not all

---

[14] Conopco offers a parade of hypothetical horribles—including the banning of sales in Texas—if the Independent Board could curtail its "operational and financial" authority. (Opp. at 22). Conopco, however, ignores that Section 6.14(f) limits the Independent Board must exercise its authority in a "reasonable" manner.
[15] Opp. at 28.

of the related documents and schedules. Yet even in the limited time available to review the BTA, it is clear that the transaction is not complete – the Parent Group, which includes Ben & Jerry's, is to perform additional actions to effectuate the Transaction. A preliminary injunction should restrain Conopco, and Ben & Jerry's management acting at Conopco's behest, from acting in furtherance of the BTA, and in derogation of the Board's authority.

Conopco moreover misses a critical point: the irreparable harm here stems from a perception that Ben & Jerry's has flip-flopped on an important societal issue or lost autonomy over the positions it can take; harms which an injunction restoring such integrity—through reaffirmation of Section 6.14 of the Merger Agreement and Section 1 of the Shareholders Agreement—would cure. Second, Conopco argues that Ben & Jerry's harms are "remote and/or speculative" because "Mr. Zinger would sell ice cream through the expiration of the License Agreement in December 2000" regardless.[16] Conopco, however, ignores the Greenfield, Cohen, and Ross Declarations, detailing how the specific *stances* the Company takes are critical to its social integrity, including the decision not to *renew* Mr. Zinger's license past 2020.[17] Finally, Conopco argues that Section 9.10 of the Merger Agreement—specifying that "irreparable damage would occur" in the event of breach—is alone not dispositive. Unilever's recent admission in court, however, seems to conclusively resolve any lingering doubts: "B&J **would clearly be harmed** if forced to provide a license to AQP against its will . . . ."[18]

---

[16] *Id.*

[17] *See* Dkt. 11, Greenfield Decl. ¶¶ 7-8, 10-11; Dkt. 10, Cohen Decl. ¶¶ 16-18, Dkt. 13, Ross Decl. ¶¶ 15-17. *See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986) (finding that actions placing church's reputation "beyond its own control" would constitute irreparable harm); *see also Millennial Plastic Surgery PLLC v. James*, No. 21 CIV. 9590 (ER), 2021 WL 5988322, at *2 (S.D.N.Y. Dec. 16, 2021) ("A company's 'loss of reputation, good will, and business opportunities' from a breach of contract can constitute irreparable harm.") (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)).

[18] See Dkt. 1. Exh. D, *Zinger v. Ben & Jerry's Homemade, Inc.*, Case No. 2:22-cv-01154, ECF No. 39, Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction, at 5 (emphasis added).

## V.     The Balance of the Equities and the Public Interest Favor Injunctive Relief.

Conopco argues both the public interest and the equities tip in its favor because an injunction would "prolong the parties impasse" regarding Ben & Jerry's future in the West Bank and subject Unilever to certain hypothetical Israeli regulatory challenges. Conopco's current positions, however, contradict those previously taken in the AQP litigation:

- Public Interest: "The public interest therefore would best be served by enforcing the terms that the parties negotiated" and "the public interest lies in the principle that agreements must be kept."[19]

- Balancing The Equities: Ben & Jerry's would be "deprived of its bargained-for absolute right not to continue the licensing relationship beyond December 31, 2022, forcing it to license its intellectual property, know-how and goodwill to a party it does not wish to license on terms it has not agreed to."[20]

- Alleged Israeli Regulatory Issues: "At most, these policies could require B&J to continue selling its products in Israel through a licensee of its choice," including one who would respect the Independent Board's decision not to sell in the West Bank.[21]

Unilever was right the first time around. This Court should find that the equities weigh in favor of enforcing the terms of the Merger Agreement and Shareholders Agreement, recognizing the Independent Board's authority, and preserving Ben & Jerry's Social Mission. Enforcing these terms will ensure that the social integrity Ben & Jerry's has spent four decades building will remain balanced against Conopco's operational concerns—the precise balance the parties sought to establish 22 years ago.

## CONCLUSION

For all the foregoing reasons, Plaintiff's Application for preliminary injunctive relief should be granted.

---

[19] *Id.* at 5, 40.
[20] *Id.* at 38.
[21] *Id.* at 39.

Dated: July 13, 2022
New York, New York

                    **COHEN & GRESSER LLP**

                    By: */s/Mark S. Cohen*
                    Mark S. Cohen
                    Jeffrey I. Lang
                    Drew S. Dean
                    800 Third Avenue, 21st Floor
                    New York, New York 10022
                    Phone: (212) 957-7600
                    Fax: (212) 957-4514

                    **AHMAD, ZAVITSANOS & MENSING PC**

                    Shahmeer Halepota
                    John Zavitsanos (*pro hac vice* pending)
                    Joseph Y. Ahmad
                    Jane Robinson (*pro hac vice* to be filed)
                    Daryl Moore (*pro hac vice*)
                    Kelsi White (*pro hac vice* to be filed)
                    Thomas Frashier (*pro hac vice*)
                    1221 McKinney, Suite 2500
                    Houston, Texas 77010
                    Phone: (713) 655-1101
                    Fax: (713) 655-0062

                    *Attorneys for Plaintiff Ben & Jerry's Homemade, Inc.*