## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

BEN & JERRY'S HOMEMADE, INC.,

Plaintiff,

v.

CONOPCO, INC., UNILEVER IP HOLDINGS B.V., and UNILEVER PLC,

Defendants.

Case No. 1:22-cv-05681 (ALC)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CONOPCO, INC., UNILEVER IP HOLDINGS B.V. AND UNILEVER PLC'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendants Conopco, Inc.,
Unilever IP Holdings B.V. and Unilever
PLC*

December 2, 2022

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

STATEMENT OF ALLEGED FACTS .............................................................................. 5

    A.    The Parties .................................................................................................. 5

    B.    The Plan of Merger and License Agreement .......................................... 6

    C.    The Closing and Shareholders Agreement ............................................. 6

    D.    Inapplicability of the License Agreement and Transfer of IP................. 7

    E.    Decades Following the Merger ................................................................. 8

    F.    Consequences of the Board's Decision.................................................... 8

    G.    The Lawsuit ................................................................................................ 9

LEGAL STANDARDS ........................................................................................................ 9

ARGUMENT .......................................................................................................................... 11

I.    Complainants Lacked Authority to Bring this Case on Behalf of Ben & Jerry's............. 11

II.    Complainants Failed to Join Indispensable Parties.............................................. 13

III.    The Complaint Fails Adequately to Plead a Breach of any Contract by Conopco............ 16

    A.    The Complaint Fails To Plead a Breach as to the Asset Sale. ............... 16

    B.    Complainants' Interference Allegations Likewise Fail To State a Claim. ............ 18

    C.    The Complaint Fails Adequately To Plead a Non-Duplicative Breach of Any Implied Covenant. .......................................................... 20

IV.    The Complaint Fails to Plead a Breach of Contract by Unilever PLC or UIP. ................ 21

    A.    The Claim Is Barred by the Statute of Limitations. ............................... 22

    B.    Neither of the Unilever Defendants Could Have Breached the License Agreement.................................................................................... 24

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACE Sec. Corp. v. DB Structured Prod., Inc.*,
   25 N.Y.3d 581 (N.Y. 2015) ...................................................................................22, 23

*Bell Atl., Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................10, 18

*Brown v. Daikin Am. Inc.*,
   756 F.3d 219 (2d Cir. 2014) ........................................................................................9

*Canstar v. J.A. Jones Const. Co.*,
   212 A.D.2d 452 (N.Y. App. Div. 1st Dep't 1995)...........................................20, 21

*Doe v. New York Univ.*,
   438 F. Supp. 3d 172 (S.D.N.Y. 2020).......................................................................19

*Ely-Cruikshank Co. v. Bank of Montreal*,
   81 N.Y.2d 399 (N.Y 1993) .........................................................................................22

*Emcee Pers. v. Morgan Lewis & Bockius, LLP*,
   269 A.D.2d 353 (N.Y. App. Div. 2d Dep't 2000) ..........................................12, 13

*Flag Wharf, Inc. v. Merrill Lynch Cap. Corp.*,
   40 A.D.3d 506 (N.Y. App. Div. 1st Dep't 2007)....................................................13

*Glob. Disc. Travel Servs. v. Trans World Airlines*,
   960 F. Supp. 701 (S.D.N.Y. 1997).......................................................................14, 15

*Guzman v. Ramos*,
   191 A.D.3d 644 (N.Y. App. Div. 2d. Dep't 2021) ..................................................16

*In Touch Concepts, Inc. v. Cellco P'ship*,
   788 F.3d 98 (2d Cir. 2015)....................................................................................20, 21

*Jagarnauth v. Massey Knakal Realty Servs., Inc.*,
   104 A.D.3d 564 (N.Y. App. Div. 1st Dep't 2013)..................................................18

*Jiehua Huang v. AirMedia Grp. Inc.*,
   No. 1:15-CV-04966-ALC, 2017 WL 1157134 (S.D.N.Y. Mar. 27, 2017)............10

*Jonesfilm v. Lion Gate Int'l*,
   299 F.3d 134 (2d Cir. 2002)........................................................................................15

*Kaplan, Inc. v. Yun*,
   16 F. Supp. 3d 341 (S.D.N.Y. 2014)..........................................................................10

*Known Litig. Holdings, LLC v. Navigators Ins. Co.*,
    934 F. Supp. 2d 409 (D. Conn. 2013) .................................................................15

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*,
    127 A.D.3d 48 (N.Y. App. Div. 1st Dep't 2015) .................................................18

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010) .................................................................................10

*Republic of Philippines v. Pimentel*,
    553 U.S. 851 (2008) ............................................................................................16

*Riccio v Genworth Financial*,
    184 A.D.3d 590 (N.Y. App. Div. 2d. Dep't 2020) .............................................16

*Richard Feiner & Co. v. Paramount Pictures Corp.*,
    941 N.Y.S.2d 157 (N.Y. App. Div. 1st Dep't 2012) ..........................................18

*Sigmon v. Goldman Sachs Mortg. Co.*,
    539 B.R. 221 (S.D.N.Y. 2015) ...........................................................................14

*Sunset Homeowners Ass'n v. DiFrancesco*,
    386 F. Supp. 3d 299 (W.D.N.Y. 2019) ..............................................................15

*TMT Co. Ltd. v. JPMorgan Chase Bank*,
    No. 16 Civ. 8757, 2018 WL 1779378 (S.D.N.Y. Mar. 28, 2018) ......................14

*Town of Haverstraw v. Columbia Elec. Corp.*,
    237 F. Supp. 2d 452 (S.D.N.Y. 2002) ................................................................18

*Triton Partners LLC v. Prudential Sec. Inc.*,
    301 A.D.2d 411 (N.Y. App. Div. 1st Dep't 2003) .............................................20

*Vision en Analisis y Estrategia, S.A. v. Andersen*,
    662 F. App'x 29 (2d Cir. 2016) ..........................................................................14

**Statutes & Rules**

11A V.S.A. Section 20.09 ..........................................................................................11

Fed. R. Civ. P. 12(b)(6) .....................................................................................1, 9, 10

Fed. R. Civ. P. 19 .......................................................................................................14

Fed. R. Evid. 201 .......................................................................................................10

N.Y. C.P.L.R. § 213(2) ..............................................................................................22

Rule 19(a) .............................................................................................................14, 15

Defendants Conopco, Inc. ("Conopco"), Unilever IP Holdings B.V. ("UIP") and Unilever PLC (together with UIP, "Unilever") (collectively, "Defendants") respectfully submit this memorandum in support of their motion to dismiss the Amended Complaint filed by a subset of the members (the "Complainants") of the limited-purpose board of directors (the "Board") of Ben & Jerry's Homemade, Inc. ("Ben & Jerry's").  Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Complainants purport to have brought this case on behalf of Ben & Jerry's against its sole (100%) shareholder, Conopco, and against Conopco's Unilever affiliates.  However, Complainants have no authority to bring suit on behalf of Ben & Jerry's.  They have failed to sue indispensable parties, including Unilever's counter-parties in the disputed transactions.  And Complainants' claims all fail on the merits:  the merger-agreement and shareholder-agreement claims against Conopco attempt to assert rights Complainants do not have; and the licensing-agreement claim against Unilever is barred by the statute of limitations and mischaracterizes an agreement that became inoperative more than two decades ago.

The board on which Complainants sit is not a normal board of directors.  Rather, it has a very narrow set of responsibilities.  Ben & Jerry's is a Vermont close corporation, owned entirely by a single shareholder, Conopco.  As such, under Vermont law, Conopco has the full power and authority to regulate the exercise of the corporate powers and the management of the business and affairs of Ben & Jerry's and to restrict the discretion or powers of the Board.  Here, Conopco has exercised its powers in this fashion consistent with the terms under which Ben & Jerry's was acquired by Unilever in 2000.  The powers and functions not *expressly* granted to the

Board are reserved to Conopco.  For example, the Board has no authority with respect to the sale of any assets or the prosecution or defense of legal actions, which is by itself dispositive.

For the better part of two decades, Conopco and the Board fulfilled their respective duties productively.  But Complainants' recent insistence on taking sides in the Israeli-Palestinian conflict created an untenable situation for Ben & Jerry's, Conopco and Unilever PLC.  By seeking to stop sales of Ben & Jerry's ice cream in the West Bank and ending a 34-year relationship with its Israeli licensee, Mr. Avi Zinger—for political reasons—Complainants have subjected Ben & Jerry's to harm, including multiple lawsuits, claims that it is in violation of Israeli law, criticism from the Israeli government and various investigations.  After careful consideration, Unilever PLC responded by causing UIP to sell certain assets relating to Ben & Jerry's business in Israel to Blue & White Ice-Cream Ltd. ("Blue & White"), a company owned by Mr. Zinger (the "Asset Sale").

Rather than respect Conopco's rights as sole shareholder of Ben & Jerry's to carry out the Asset Sale, Complainants sought to block the Asset Sale by filing this lawsuit and purporting (falsely) to bring it on behalf of Ben & Jerry's, though they have no power or authority to do so. By way of their Amended Complaint, Complainants go even further, claiming Unilever PLC and UIP (not previously parties to this case) breached a 2000 license agreement that has been inoperative (and recognized as such by the Board) for decades.  What's more, they accuse Defendants of a purportedly "covert" transfer of intellectual property, even though the IP was transferred to UIP over 20 years ago by Ben & Jerry's Holdings (not by Unilever), which has been a matter of public record for decades.

Complainants' allegations are baseless, and judgment should be entered for Defendants and against Complainants for each of the following reasons:

2

<u>Complainants lack the authority to sue on behalf of Ben & Jerry's.</u>  A person may not sue on behalf of another person or entity unless duly empowered and lawfully authorized to do so. As members of the limited-purpose board of directors of a Vermont close corporation, Complainants' powers are strictly restricted.  Under the relevant governance documents, the Board has "only those powers and functions expressly granted to it in this Agreement.  *All other powers and functions are reserved to the Shareholder*", namely Conopco.  As relevant here, the Board has no authority to prosecute a legal action on behalf of Ben & Jerry's—generally, or specifically against Ben & Jerry's sole shareholder.  Nor has the Board been granted any power to enforce (on behalf of Ben & Jerry's or otherwise) the agreements under which it purports to sue, and neither Ben & Jerry's sole shareholder nor its management authorized Complainants' suit.  Complainants' claims contravene Vermont law and the very governing documents that created the Board in the first place, and should therefore be dismissed.  (*See* Section I below.)

<u>Complainants again failed to join indispensable parties.</u>  Although Complainants seek to prevent Mr. Zinger and his affiliates from continuing to conduct business in Israel and the West Bank (the "Territories"), they sued neither Mr. Zinger nor his affiliates, American Quality Products Ltd. ("AQP") and Blue & White.  Nor do they assert any claims against Unilever relating to the merger agreement (the "Merger Agreement") or the shareholders agreement (the "Shareholders Agreement") (together, the "Agreements"), despite the fact that the remedy Complainants seek implicates Unilever's rights.  Absent these missing parties, the Court cannot provide the requested relief.  Granting Complainants the requested relief—an injunction preventing the transfer of future trade dress and know-how to Mr. Zinger and his affiliates, among other things—would, if enforceable, limit Mr. Zinger's ability to sell ice cream in Israel and the Territories under the trademarks registered to his affiliated companies.  Thus, the

3

requested relief should also be denied for failure to join necessary and indispensable parties.
(*See* Section II below.)

Complainants fail adequately to allege a breach of any contract by Conopco.  The
Amended Complaint's allegations are fatally flawed.  Complainants accuse Conopco of
breaching the Agreements entered into by Conopco and Ben & Jerry's in 2000 by selling
selected assets of Ben & Jerry's.  However, the Agreements operate to reserve all rights over
asset sales to Conopco, as the sole shareholder; they give the Board no authority over asset sales.
To the extent the Amended Complaint alleges a breach based on other conduct, *e.g.*, withholding
compensation, canceling a Board meeting or not seating a director, the allegations are vague and
conclusory and likewise fail to state a claim.  That Complainants allege breaches of the duty of
good faith and fair dealing does nothing to save their case; those allegations are merely
duplicative of their contract claims and thus improper as a matter of law.  At bottom,
Complainants' claims depend on a misreading of the Board's limited rights with respect to Ben
& Jerry's "social mission" and "brand integrity".  Nothing in either agreement affords
Complainants the rights they claim.  (*See* Section III below.)

Complainants fail to state a claim for breach of any contract by Unilever PLC or UIP.
For the first time in their Amended Complaint, Complainants accuse Unilever PLC and UIP of
breaching a license agreement entered into between Ben & Jerry's and Ben & Jerry's Holdings,
on the one hand, and Unilever N.V. and Unilever PLC, on the other hand, on April 11, 2000 (the
"License Agreement") by a supposedly "covert" transfer of intellectual property in December
2000.  However, any such claim is time barred:  it comes long after the six-year statute of
limitations ran, and there is no basis for equitable tolling, as the supposedly surreptitious conduct
(the transfer of Ben & Jerry's international IP to UIP) has been a matter of public record around

4

the world for decades.  Even if it were not time-barred, the claim fails for the simple reason that,

as the Board recognized, the License Agreement became unnecessary, inoperative and "moot"

when Unilever acquired Ben & Jerry's in August 2000; thus, the subsequent IP transfer could

have not breached the agreement.  What's more, the claim founders because, among other things,

(i) the allegedly "covert" transfer was undertaken by Ben & Jerry's and Ben & Jerry's Holdings,

not Unilever; and (ii) in the event of a merger (*e.g.*, Conopco's acquisition of Ben & Jerry's), the

License Agreement permitted Ben & Jerry's to transfer its rights and terminated the Board's

allegedly-breached approval rights.  (*See* Section IV below.)

## STATEMENT OF ALLEGED FACTS[1]

### A.    The Parties

Ben & Jerry's is a Vermont close corporation headquartered in Burlington, Vermont.

(¶ 7; Ex. B.)  Conopco is a New York corporation headquartered in Englewood Cliffs, New

Jersey.  (¶ 8.)  Conopco is the sole shareholder of Ben & Jerry's.  (Ex. B.)  Unilever PLC is a

United Kingdom public limited company headquartered in London, England.  (¶ 9.)  UIP is a

Netherlands private limited liability company headquartered in Rotterdam, Netherlands, and a

subsidiary of Unilever PLC.  (¶ 10, n.15.)

In 2020, Unilever N.V. was dissolved as part of a corporate restructuring at the Unilever

group of companies, and UIP became the owner of the rights to Ben & Jerry's trademarks.  (*See*

¶ 3.)  For simplicity, Defendants at times refer to Unilever N.V. as "UIP".

---

[1] Citations to the Amended Complaint are given as "¶ __" or "¶¶ __"; citations to the exhibits to the Amended Complaint are given as "Ex. __"; and citations to the exhibits to the Declaration of Andrew Wiktor are given as "Wiktor Ex. __".

### B.      The Plan of Merger and License Agreement

On April 11, 2000, Ben & Jerry's executed an Agreement and Plan of Merger with Conopco (as amended and restated on July 5, 2000).  (Ex. A.)  In accordance with Vermont law, the agreement concentrated broad powers in Conopco (Ben & Jerry's sole shareholder), carving out only very narrow, expressly enumerated powers to a limited-purpose Board.  (Ex. A.)  These limited rights included responsibility, together with the CEO, for "preserving and enhancing the objectives of the historical social mission of the Company" and "safeguarding the integrity of the essential elements of the Ben & Jerry's brand-name".  (Ex. A §§ 6.14(d)-(f).)  The Merger Agreement recognized Conopco's "primary responsibility for the financial and operational aspects of [Ben & Jerry's] and the other aspects of [Ben & Jerry's] not allocated to the Company Board".  (Ex. A § 6.14(j).)

At the same time, Ben & Jerry's and Ben & Jerry's Holdings (which later merged with and into Ben & Jerry's Homemade, Inc.), on the one hand, and Unilever PLC and UIP, on the other hand, entered into the License Agreement.  The License Agreement granted Unilever a license to certain Ben & Jerry's intellectual property and allowed it to make and sell Ben & Jerry's ice cream globally irrespective of any merger, thus serving as deal protection for the expected merger by making Ben & Jerry's less attractive to other potential suitors.  (Ex. C.)  The agreement recognized that as of April 2000, Ben & Jerry's (as licensor) owned the IP that Unilever, which had not yet acquired Ben & Jerry's, was to license.  (Ex. C § 11(a).)

### C.      The Closing and Shareholders Agreement

On August 3, 2000, the merger closed and, pursuant to the Merger Agreement, Conopco became the sole shareholder of Ben & Jerry's.  (Ex. A § 1.03.)  Thereafter, Ben & Jerry's (including the assets it had previously licensed to the Unilever entities) belonged to Unilever PLC and its affiliates.  (*See* Ex. A.)

The same day, Conopco and Ben & Jerry's entered into the Shareholders Agreement (¶ 35), which "regulates the exercise of corporate powers and the management of the business and affairs of the Company and limits and restricts as provided [t]herein the powers and functions of the Company Board".  (Ex. B § 1(a).)  Section 1 of the Shareholders Agreement provides that the "Board shall have only those powers and functions *expressly* granted to it in this Agreement.  All other powers and functions are reserved to the Shareholder".  (Ex. B § 1(a) (emphasis added).)  The Board was granted "primary" responsibility (working with the CEO) for preserving and enhancing the social mission priorities and safeguarding the essential integrity of the brand.  (Ex. B § 1(e)-(f).)

Ben & Jerry's Bylaws, which were adopted on August 3, 2000, reiterate that "[t]he Board of Directors shall only have such corporate powers as are expressly provided to it in the Shareholders Agreement".  (Wiktor Ex. C.)

### D.    Inapplicability of the License Agreement and Transfer of IP

After the merger closed, as the sole owner of Ben & Jerry's (indirectly through Conopco), Unilever did not need to make Ben & Jerry's branded ice cream pursuant to a *license* from Ben & Jerry's; it could and did operate the Ben & Jerry's branded ice cream business through Ben & Jerry's *itself*.  Thus, the supposedly-breached License Agreement became "moot" and inoperative, as recognized by the Board at a September 2000 Board meeting, which was attended by Jennifer Henderson, a Complainant.  (Wiktor Ex. Q.)

On December 22, 2000, Ben & Jerry's Holdings and UIP executed an agreement under which Ben & Jerry's Holdings sold to UIP all rights to the Ben & Jerry's trademarks.  (Exs. J, K, L.)  On December 29, 2000, UIP licensed back to Ben & Jerry's the relevant intellectual property.  (Wiktor Ex. R.)  The parties have been operating under this December 29, 2000 license agreement for decades.

### E.    Decades Following the Merger

Conopco has been the sole (100%) shareholder of Ben & Jerry's for more than two decades since the merger closed and the Shareholders Agreement was executed.  And since December 22, 2000, Unilever N.V.—and later UIP—has controlled the intellectual property without any challenge to its ownership.  Contrary to suggestions in the Amended Complaint of hidden, secret and covert dealings, UIP has registered the relevant IP publicly around the world since 2001.  (*See, e.g.*, Wiktor Exs. G-I; *see also* Wiktor Exs. J-O.)

During this same period, Ben & Jerry's ice cream was sold in the Territories pursuant to a license agreement with AQP, Mr. Zinger's Israeli company.  (Dkt. 36-9; *see also* Ex. E at 6-10.) This license agreement—which was entered into in 2004 and amended in 2013 and 2020—was signed by Ben & Jerry's and Unilever N.V. or UIP.  (Dkt. 36-9; *see also* Ex. E at 7, 9.)  Nowhere in their Amended Complaint do Complainants allege that Ben & Jerry's (or even Complainants themselves) were somehow unaware that UIP was licensing intellectual property to an Israeli licensee for decades.  And after the Board passed a "resolution in July 2020, instructing Ben & Jerry's management to 'immediately' develop a plan regarding ceasing Ben & Jerry's business in the occupied West Bank" (¶ 74), Ben & Jerry's *and UIP* jointly amended the license agreement with AQP to change the definition of "Territory" to mention only Israel, and not explicitly mention the West Bank.  (Dkt. 36-7, ¶ 52.)  Ben & Jerry's continued to sell ice cream in the West Bank following that amendment.  (*See* ¶¶ 74-80.)

### F.    Consequences of the Board's Decision

On July 19, 2021, Ben & Jerry's announced that it had decided to let the license agreement with Mr. Zinger expire on December 31, 2022, ending Ben & Jerry's sales in the Territories after that date, but that Ben & Jerry's would "stay in Israel through a different arrangement".  (*See* ¶ 82; *see also* Dkt. 36-10.)

8

The announcement had an adverse impact on Ben & Jerry's.  Among other things:  the brand suffered, with multiple commentators calling the boycott anti-Semitic and supportive of the Boycott, Divestment and Sanctions ("BDS") movement; Israeli antitrust regulators commenced an investigation into the company; two class action lawsuits were filed against it in Israel; Ben & Jerry's was sued in the District of New Jersey; prominent politicians in both the United States and Israel condemned the company's decision; and certain members of the United States Congress demanded an SEC investigation into Ben & Jerry's.

In an attempt to mitigate this harm, on June 29, 2022, Unilever PLC caused UIP to sell certain assets to Mr. Zinger's company, Blue & White.  (Dkt. 34-1; ¶¶ 86-87; Ex. F.)  Pursuant to the Asset Sale, all rights to the Hebrew and Arabic versions of the Ben & Jerry's trademarks in Israel and the Territories were sold to Blue & White as of June 29, 2022.  (Dkt. 34-1 & 34-2.)  Mr. Zinger's company, Blue & White, is now free to sell ice cream under its own fully owned trademarks throughout Israel and the Territories.

### G.    The Lawsuit

On July 5, 2022, Complainants commenced this lawsuit and requested immediate injunctive relief, purportedly on behalf of Ben & Jerry's.  (Dkt. 9.)  This Court denied Complainants' requests for a TRO (Dkt. 18) and preliminary injunction (Dkt. 52).  On September 30, 2022, Complainants filed an Amended Complaint.  (Dkt. 58.)

Conopco, as the sole shareholder of Ben & Jerry's, has resolved that the Board had no power or authority to bring this lawsuit or to assert the rights at issue, nor is the lawsuit supported by the management of Ben & Jerry's, which likewise did not authorize this lawsuit.

### LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), "[a] complaint must be dismissed if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Brown v.*

*Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Mere conclusory statements and "formulaic recitation[s] of the elements of a cause of action" are not sufficient to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555.

To decide a Rule 12(b)(6) motion, the Court "may consider facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference".  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation marks omitted).[2]  Further, the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned".  Fed. R. Evid. 201.  In considering a motion to dismiss, a court may take judicial notice of official trademark records, *see, e.g., Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 345 (S.D.N.Y. 2014), and "legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit", *Jiehua Huang v. AirMedia Grp. Inc.*, No. 1:15-CV-04966-ALC, 2017 WL 1157134, at *5 (S.D.N.Y. Mar. 27, 2017).[3]

---

[2] Complainants attached to their Amended Complaint, and rely upon, Conopco's PI opposition brief (Ex. E) (*see* ¶¶ 5 n.5, 51, 84, 87, 90), but they did not attach the exhibits to Conopco's brief.  This Court may consider those exhibits, Exhibits A-F of the Declaration of Andrew Wiktor, which were thus incorporated by reference into the Amended Complaint.

[3] Defendants respectfully request that the Court take judicial notice of Exhibits G-R, which are attached to the Declaration of Andrew Wiktor.  Wiktor Exhibits G, H and J-O are true and correct copies of publicly available trademark registrations showing UIP's ownership of various Ben & Jerry's-related IP.  Such documents are judicially noticeable.  *See Kaplan, Inc.*, 16 F. Supp. 3d at 345.  Exhibits I and P-R are true and correct copies of Ben & Jerry's documents (a deed of assignment (Wiktor Ex. I), draft and final minutes of a Ben & Jerry's board meeting (Wiktor Exs. P & Q) and a license agreement entered into between Unilever N.V. and Ben & Jerry's (Wiktor Ex. R)).  The accuracy of these documents—all of which the Board had access to and are relevant to this litigation—is not subject to reasonable dispute.  Fed. R. Evid. 201.

10

**ARGUMENT**

I.     **COMPLAINANTS LACKED AUTHORITY TO BRING THIS CASE ON BEHALF OF BEN & JERRY'S.**

Although they purport to have commenced this case on behalf of Ben & Jerry's, Complainants lacked the authority to do so.  By their own account, the Ben & Jerry's Board is no ordinary board, and it does not have the plenary powers normally accorded to boards of directors, such as hiring and firing the CEO, awarding dividends or setting company policy.  (*See* ¶¶ 29-30.)  It is the limited-purpose board of a Vermont close corporation.  (Ex. B.)  As such, it has "only those powers and functions expressly granted to it" (Ex. B § 1(a)), and it has never been endowed with power to sue on behalf of Ben & Jerry's.

The Vermont statute provides that "all the shareholders of a close corporation may agree in writing to regulate the exercise of the corporate powers and the management of the business and affairs of the corporation".  11A V.S.A. § 20.09(a).  The statute gives shareholders broad powers, allowing them to "eliminate a board of directors" altogether.  11A V.S.A. § 20.09(b).  And if they choose to have a board of directors, shareholders are expressly permitted to "restrict the discretion or powers of the board" in any way they see fit.  11A V.S.A. § 20.09(b)(2).

In accordance with Vermont law, Conopco restricted the Board's powers, as reflected in Ben & Jerry's Articles of Incorporation: "[t]he shareholder of the Corporation has agreed in writing to . . . restrict[] the discretion and powers of the Corporation's board of directors".  (Wiktor Ex. D, Art. 6 § 3(c).)  Those restrictions are set forth in the Shareholders Agreement, which was "made and entered into in accordance with the provisions of 11A V.S.A. Section 20.09".  (Ex. B § 1(l).)  Under the Shareholders Agreement, the Board has only those powers "expressly granted to it in this Agreement".  (Ex. B § 1(a).)  "All other powers and functions are reserved" to Ben & Jerry's sole shareholder, Conopco.  (Ex. B § 1(a).)  The agreement gives the

11

Board some responsibility, working with Ben & Jerry's CEO, for "preserving and enhancing the objectives of the historical social mission of the Company" and "safeguarding the integrity of the essential elements of the Ben & Jerry's brand-name". (Ex. B §§ 1(e)-(f).)  Importantly, however, it gives the Board no authority to *enforce* the agreement against Conopco or anyone else—let alone authority to sue on behalf of Ben & Jerry's.

Complainants contend they have the right to sue on behalf of Ben & Jerry's because Section 7 of the Shareholders Agreement provides the right "to enforce specifically the terms and provisions of this Agreement". (¶ 95;  Ex. B § 7.)  That is wrong.  Section 7 of the Shareholders Agreement expressly states it is "the parties" to the Shareholders Agreement (*i.e.*, Ben & Jerry's and Conopco) that are entitled to seek an injunction and submit to New York jurisdiction, but says nothing about the power of a subset of directors or even the Board in its entirety, to enforce, either directly or on behalf of the Company.  That Section 7 gives rights only to "the parties" and not "the Company Board"—which is a defined term that is distinct from Ben & Jerry's and is referenced as such throughout the agreement (*see* Ex. B §§ 1(a)-(h), 1(j)-(l), 4)—is significant, and a court "may not, in the guise of interpreting a contract, add or excise terms or distort the meaning of those used to make a new contract for the parties", *Emcee Pers. v. Morgan Lewis & Bockius, LLP*, 269 A.D.2d 353, 353 (N.Y. App. Div. 2d Dep't 2000).  That is especially so where the agreement, as Complainants note, was heavily negotiated for a year and a half.  (¶ 29.)

In arguing otherwise, Complainants effectively contend that they have the right *by implication* to sue on behalf of Ben & Jerry's to enforce the Shareholders Agreement.  Any such claim is foreclosed by the Shareholders Agreement, which expressly states that the Board has no rights by implication.  (Ex. B § 1(l).)  Moreover, that agreement specifically states that it is not intended to provide any rights or remedies to any person other than Conopco and Ben & Jerry's,

12

other than a very narrow set of third-party beneficiary rights to enforce provisions regarding the *removal* of directors, which is not at issue here.  (Ex. B § 4.)

Complainants contend that applying the plain language of the Shareholders Agreement "would render the Independent Board's authority toothless" because only the Unilever-appointed CEO could initiate a lawsuit to safeguard the Board's limited authority.  (¶ 96.)  They argue in effect that the Court should read enforcement rights into a contract that provided for them elsewhere in express terms, did not provide for them as to this lawsuit and expressly prohibits the grant of rights by implication.  If the parties had intended to permit the limited-purpose Board to bring a lawsuit on behalf of Ben & Jerry's against its sole shareholder—an extraordinary event in any legal regime—they would have said so.  They did not, and New York does not permit contracts to be rewritten in litigation.  *Flag Wharf, Inc. v. Merrill Lynch Cap. Corp.*, 40 A.D.3d 506, 507 (N.Y. App. Div. 1st Dep't 2007); *Emcee Pers.*, 269 A.D.2d at 353.

Complainants' lack of authority to sue is just as clear as to the License Agreement.  The License Agreement says nothing about the authority of the Board, and was executed *before* the Shareholders Agreement and before Conopco became the sole shareholder of Ben & Jerry's.  The Shareholders Agreement, in turn, only references the License Agreement to define two terms (Ex. B § 1(h)), and gives the Board no rights to direct its enforcement.  Nor is Complainants' reliance on Section 9.10 of the Merger Agreement as a source of authority to enforce the License Agreement (or the Merger Agreement) (¶ 97) availing.  Like the Shareholders Agreement, the Merger Agreement gives enforcement powers only to the parties to that agreement, not the Board.  (Ex. A § 9.10.)

## II.   COMPLAINANTS FAILED TO JOIN INDISPENSABLE PARTIES.

The Amended Complaint should also be dismissed because Complainants failed to join indispensable parties—including Blue & White (an Israeli corporation), Mr. Zinger (an Israeli

citizen), AQP (an Israeli corporation) and the Unilever companies (except as to the License

Agreement claim) (collectively, the "Absent Parties").

The law is clear that a complaint should be dismissed in the absence of an indispensable

party.[4]  In deciding whether dismissal is appropriate, courts look to Rule 19 of the Federal Rules

of Civil Procedure, which "sets forth a two-step test for determining whether the court must

dismiss an action for failure to join an indispensable party".  *TMT Co. Ltd. v. JPMorgan Chase

Bank*, No. 16 Civ. 8757, 2018 WL 1779378, at *2 (S.D.N.Y. Mar. 28, 2018).  "First, the court

must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a

necessary party under Rule 19(a)."  *Id*.  "Second, after the court makes a threshold determination

that a party is necessary under Rule 19(a), it must determine whether joinder of the absent party

is 'not feasible for jurisdictional or other reasons.'"  *Id.*  "If a person who is required to be joined

if feasible cannot be joined, the court must determine whether, in equity and good conscience,

the action should proceed among the existing parties or should be dismissed."  *Id.*

There is no question that the Absent Parties are necessary parties under Rule 19(a).[5]

Complainants seek to enjoin performance of a contract following a sale of assets from Unilever

to Blue & White; yet Complainants failed to join in this Action Blue & White or AQP—Blue &

White's guarantor that has permission to continue purchasing Ben & Jerry's supplies in Israel

and the West Bank.  In the absence of Blue & White and AQP, the Court cannot accord complete

---

[4] *See, e.g.*, *Vision en Analisis y Estrategia, S.A. v. Andersen*, 662 F. App'x 29, 32-33 (2d Cir. 2016) (summary order) (affirming dismissal for failure to join an indispensable party); *Glob. Disc. Travel Servs. v. Trans World Airlines*, 960 F. Supp. 701, 708–10 (S.D.N.Y. 1997) (claim dismissed for failure to join an indispensable party); *Sigmon v. Goldman Sachs Mortg. Co.*, 539 B.R. 221, 231–32 (S.D.N.Y. 2015) (claim dismissed for failure to join necessary parties).

[5] An absent party is necessary under Rule 19(a) "where (1) in the person's absence, complete relief cannot be accorded among existing parties, or (2) the person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest, or (B) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the interest."  *TMT*, 2018 WL 1779378, at *2.

relief among the existing parties.[6]  Indeed, although Complainants appear to have brought this action to prevent Mr. Zinger and his company from selling Ben & Jerry's ice cream in the West Bank, they have failed to include them in this lawsuit.  A decision against Conopco would not bind Blue & White, AQP or Mr. Zinger, as neither has been sued or served.  If the requested relief were somehow enforceable (which it is not), then it would impair, impede and prejudice Mr. Zinger's, AQP's and Blue & White's rights to do business—rights Mr. Zinger has had since 1987, and that he and his companies have now acquired in perpetuity.

Complainants also failed to join any Unilever entity as to its claims regarding the Agreements (to which they are not subject to personal jurisdiction in this Court).  That Complainants name Unilever as a defendant in the breach of license agreement claim does not put Unilever before the Court for purposes of Complainants' other claims; the consent-to-jurisdiction provision of the License Agreement only pertains to the license-agreement claim.

Consequently, this action should not proceed in the absence of Mr. Zinger, Blue & White and AQP.  It would also prejudice Unilever by exposing it to additional litigation if it were forced to breach the contract governing the Asset Sale.  Blue & White (or its owner, Mr. Zinger) and Unilever—the parties to the transaction the Board seeks to enjoin—are therefore indispensable for any adjudication of the Board's claims.  *See, e.g.*, *Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997) ("[A]s a practical matter, [the absent party's] interests could be impaired or impeded by this Court's resolution of a contract to which it is the primary signatory"); *Republic of Philippines v. Pimentel*, 553 U.S. 851,

---

[6] *See Sunset Homeowners Ass'n v. DiFrancesco*, 386 F. Supp. 3d 299, 304–05 (W.D.N.Y. 2019) ("It is well established that a party to a contract which is the subject of the litigation is considered a 'necessary' party") (quoting *Known Litig. Holdings, LLC v. Navigators Ins. Co.*, 934 F. Supp. 2d 409, 421 (D. Conn. 2013)); *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002) ("If the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a)").

870 (2008) (noting that "adequacy refers to the public stake in settling disputes by wholes, whenever possible" (internal quotation marks omitted)).

## III.   THE COMPLAINT FAILS ADEQUATELY TO PLEAD A BREACH OF ANY CONTRACT BY CONOPCO.

Complainants assert claims against Conopco for breaches of the Agreements (¶¶ 99-108, 116-23), and claims for breach of the implied covenant of good faith and fair dealing as to both agreements (¶¶ 109-15, 124-29).  None has merit.

### A.   The Complaint Fails To Plead a Breach as to the Asset Sale.

The gravamen of the Amended Complaint (like the initial Complaint) is that Conopco breached the Agreements by selling certain Ben & Jerry's assets to Ben & Jerry's long-time Israeli licensee.  (¶¶ 103-05, 120.)  However, the plain language of the Agreements makes clear that Conopco was well within its rights in completing the asset sale.  Thus, Complainants' breach of contract claims fail as a matter of law.

The allegedly breached Agreements are governed by New York law.  (Ex. A § 9.08, Ex. B § 5.)  To make out a claim for breach of contract under New York law, a plaintiff must show: "(1) formation of a contract between plaintiff and defendant, (2) performance by plaintiff, (3) defendant's failure to perform, [and] (4) resulting damage".  N.Y. Pattern Jury Instr.—Civil § 4:1; *see Guzman v. Ramos*, 191 A.D.3d 644, 646 (N.Y. App. Div. 2d. Dep't 2021); *Riccio v Genworth Financial*, 184 A.D.3d 590, 591 (N.Y. App. Div. 2d. Dep't 2020).  To show that Conopco breached the Agreements here, Complainants must show that Conopco was not permitted to sell the assets and thus failed to perform its obligations under the Agreements in doing so.  They cannot make that showing.

The Agreements both address the issue of asset sales, as spelled out in Exhibit A § 1(c)(i) of the Shareholders Agreement and Exhibit B § 1A(3) of the Merger Agreement, and allocate

sole responsibility for asset sales to Conopco, not the Board.  As stated in Section 1(a) of the

Shareholders Agreement, the Board has "only those powers and functions expressly granted to it

in this Agreement.  *All other powers and functions are reserved to the Shareholder*".  (Ex. B

§ 1(a); *see also* Ex. A § 6.14(j).)  Nothing in the Agreements expressly gives the Board any

responsibility for asset sales.  (*See*  Exs. A, B.)  Thus, according to the Agreements,

responsibility for asset sales falls squarely on Conopco, and its sale of Ben & Jerry's assets,

especially the narrow set of assets at issue, could not possibly breach the Agreements.

Nevertheless, Complainants contend the Board's "social mission" and "brand integrity"

responsibilities give it rights over asset sales.  (¶ 88.)  But that argument disregards the

Agreements in multiple respects.  Specifically, it:

> i.   <u>Ignores the fact that all of the rights not "expressly granted" to the Board are for the Shareholder.</u>  (*See*  Ex. B § 1(a) (stating that "the Company Board shall have only those powers and functions expressly granted to it in this Agreement.  All other powers and functions are reserved to the Shareholder.").)
>
> ii.  <u>Disregards the fact that the Board is not allowed any rights by implication.</u>  The Shareholders Agreement states that "the Company Board shall not have any rights, powers or authority, express or implied, except as specifically set forth in this Agreement."  (Ex. B § 1(l).)
>
> iii. <u>Ignores the text of the Agreements that explains the nature of the social mission requirements, which have nothing to do with preventing asset sales.</u>  The language of the Agreements is focused almost exclusively on continuing acts the company was doing in 2000, *e.g.*, "[c]ontinu[ing] packaging improvement efforts"; "continu[ing] sustainable agriculture efforts".  Nothing listed comes close to talking about preventing a sale of assets.  (Ex. A (Schedule 6.14); Ex. B (Ex. B).)
>
> iv.  <u>Ignores that the Board's "brand integrity" responsibility is limited to preventing certain actions by the Ben & Jerry's CEO—not the Shareholder—and concerns examples such as product standards and specifications.</u>  Neither the Merger Agreement nor Shareholders Agreement gives the Board veto power over Conopco's decision to execute an asset sale.
>
> v.   <u>Depends on a commercially unreasonable construction of the Agreements.</u>  Under Complainants' theory, the Board could veto an asset sale or a sale of the entire company, even though the Agreements give Conopco, the sole (100%) shareholder, responsibility for such sales.  The Board's interpretation of its rights runs

counter to the well-established rule that contracts must be construed to be commercially reasonable.  *See*, *e.g.*, *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 127 A.D.3d 48, 54 (N.Y. App. Div. 1st Dep't 2015).  Had the parties intended to give the Board veto rights over some or all asset sales, they would have said so.

Where, as here, the plain language of a contract forecloses the alleged breach, judgment should be entered in favor of the defendant.  *See*, *e.g.*, *Jagarnauth v. Massey Knakal Realty Servs., Inc.*, 104 A.D.3d 564, 564 (N.Y. App. Div. 1st Dep't 2013); *Richard Feiner & Co. v. Paramount Pictures Corp.*, 941 N.Y.S.2d 157, 161-62 (N.Y. App. Div. 1st Dep't 2012).

### B.    Complainants' Interference Allegations Likewise Fail To State a Claim.

In addition to challenging Conopco's right to sell assets wholly owned by it, the Amended Complaint adds a laundry list of conclusory allegations of supposed additional breaches.  These include allegedly:  making statements Complainants disagree with; thwarting communication between the Board and Ben & Jerry's management and franchisees; canceling Board meetings; threatening to shut the Board out of critical decisions; refusing to elect new directors; withholding compensation from the Board; eliminating or combining certain Ben & Jerry's employment positions; refusing to implement Board decisions; and marketing products without Board approval.  (¶ 93.)

With the exception of the statement made by Unilever PLC CEO Alan Jope—which was true, accurate and consistent with the Agreements—the remaining allegations are impermissibly conclusory.  *See Twombly*, 550 U.S. at 555.  Such allegations "are insufficient as a matter of law".  *Town of Haverstraw v. Columbia Elec. Corp.*, 237 F. Supp. 2d 452, 455 (S.D.N.Y. 2002).  Complainants allege, for example, that "Defendants have made statements on behalf of Ben & Jerry's that the Board had expressly rejected" (¶ 93), yet the only statement mentioned in the Amended Complaint that was made by any Defendant was Unilever's statement that it recognized that the Board had certain rights (¶¶ 5, 84).  They contend that "Defendants have

18

thwarted communication between Ben & Jerry's management and the Independent Board, as well as between franchisees and the Independent Board, regarding product quality and other concerns" (¶ 93), but not a single detail is provided.  And they allege that "Defendants have abruptly cancelled Board meetings and attempted to bend Board rules regarding quorum" (¶ 93), but they do not identify a single specific instance of such conduct.  *See Doe v. New York Univ.*, 438 F. Supp. 3d 172, 182 (S.D.N.Y. 2020) (dismissing claim where Plaintiff failed to identify a single instance supporting cause of action).

In any case, Complainants' new allegations in no way constitute a material breach of the Agreements.  They point to nothing in the Agreements (and there is nothing) that:  prohibits Defendants from making statements that protect Ben & Jerry's and Unilever; bars Defendants from managing communications with the employees of Unilever family companies; prevents Defendants from playing a role in the scheduling of meetings and respecting rules regarding quorum; requires Conopco to relinquish its rights as the sole owner of Ben & Jerry's or to expand the rights of the Board based on Complainants' shifting political views; prevents Defendants from ensuring director candidates meet basic eligibility criteria; mandates Defendants to disburse Ben & Jerry's revenues for charity in perpetuity; prohibits Defendants from combining management roles; compels Defendants to implement product design, introduction and marketing decisions made by Ben & Jerry's management; or obligates Defendants to compensate Complainants, especially where they refuse to adhere to company policy and engage in conduct detrimental to the company.

Moreover, Complainants misrepresent the one contractual obligation they contend prohibits the conduct complained of, Section 6.14(i) of the Merger Agreement and Section 1(i) of the Shareholders Agreement.  (¶¶ 106, 119.)  Although they allege that "Section 6.14 bars

19

Defendants from taking any action that may prevent *the Independent Board* from 'fulfilling its obligations'" (¶ 93 (emphasis added)), that provision actually says something quite different: "Conopco shall not prevent *the Surviving Corporation* from fulfilling its obligations under this Section 6.14" (Ex. A § 6.14(i) (emphasis added)). It says nothing about the Board, and the same is true of Section 1(i) of the Shareholders Agreement. Moreover, even if Section 6.14(i) or Section 1(i) were intended to protect the Board's rights, Complainants still have not alleged how it has been prevented from fulfilling its obligations. Thus, these new claims should also be dismissed; not only do Complainants lack the authority to assert them (as described in Section I above), but they also fail properly to state a claim. This factual paucity is particularly egregious here, where Plaintiffs took weeks to amend, only to file an amended complaint that repeatedly misstates and distorts the foundational documents at issue and still fails to state a claim.

### C. The Complaint Fails Adequately To Plead a Non-Duplicative Breach of Any Implied Covenant.

"[T]he implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms". *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015). Further, a breach of the implied covenant of good faith and fair dealing claim is properly dismissed if it is "merely a substitute for a nonviable breach of contract claim". *Triton Partners LLC v. Prudential Sec. Inc.*, 301 A.D.2d 411, 411 (N.Y. App. Div. 1st Dep't 2003). Such a claim is "redundant" of a breach of contract claim, and when the breach of contract claim fails, so too must a duplicative implied covenant claim. *Canstar v. J.A. Jones Const. Co.*, 212 A.D.2d 452, 453 (N.Y. App. Div. 1st Dep't 1995).

Here, Complainants allege that Conopco "breached the implied covenant of good faith and fair dealing implied in the Merger Agreement by freezing the Board's salaries and taking other measures to diminish the Board's authority". (¶ 114.) This allegation is duplicative of

20

Complainants' breach of contract claim, where Complainants allege that Conopco "breached its obligation under Section 6.14, including Section 6.14(i), by freezing the Board's compensation and undermining the Board's authority (including regarding product quality concerns)".  (¶ 106.) Because the breach of contract claim fails (*see* Section II.A and Section II.B above), the redundant implied covenant claim must fail too.  *Canstar*, 212 A.D.2d at 453.

Complainants also allege that Conopco breached the Agreements' implied covenants of good faith and fair dealing when *Ben & Jerry's Holdings* transferred certain IP to UIP in December 2000.  (¶¶ 113, 128.)  The Shareholders Agreement, which operationalizes the Merger Agreement, however, reserves to Conopco all "powers and functions" other than those "expressly granted" to the Board.  (Ex. B § 1(a).)  Complainants' allegation that Conopco was restricted from executing the IP transfer in December 2000 is "inconsistent with express contractual terms".  *In Touch Concepts, Inc.*, 788 F.3d at 102.  The Agreements do nothing to prevent Conopco—much less Ben & Jerry's Holdings—from transferring the IP it owns; indeed, both Agreements expressly give Conopco the right to sell assets.  (Ex. A (Ex. B § A(3)); Ex. B (Ex. A § 3(c)).)  Moreover, the transfer documents are clear on their face that Conopco did not effect the challenged December 2000 transfers.  (Exs. J, K, L.)  These allegations therefore fail.

## IV.   THE COMPLAINT FAILS TO PLEAD A BREACH OF CONTRACT BY UNILEVER PLC OR UIP.

The Board's single claim against Unilever PLC and UIP for breach of the License Agreement fares no better.  To begin, the claim is time barred:  it comes long after the six-year statute of limitations ran, and there is no basis for equitable tolling, as the supposedly surreptitious conduct has been a matter of public record around the world for decades.  The claim also fails because the License Agreement became unnecessary, inoperative and "moot" when Unilever acquired Ben & Jerry's in August 2000.  Moreover, Complainants ignore both their

own allegations (*e.g.*, that the challenged transfer was undertaken by Ben & Jerry's Holdings, not Unilever) and the plain language of the License Agreement, which addresses the parties' rights in the event of a merger.

### A.     The Claim Is Barred by the Statute of Limitations.

Like the Agreements, the License Agreement is governed by New York law.  (Ex. C § 25.)  In New York, the statute of limitations for a breach of contract claim is six years.  N.Y. C.P.L.R. § 213(2).  The clock begins to run from "when liability for [the] wrong has arisen even though the injured party may be ignorant of the existence of the wrong or injury".  *See ACE Sec. Corp. v. DB Structured Prod., Inc.*, 25 N.Y.3d 581, 594 (N.Y. 2015) (citations omitted).

Here, the alleged wrong took place on or about December 22, 2000, when Ben & Jerry's Holdings transferred the relevant intellectual property to UIP.  (Ex. J.)  It was at this time that the alleged claim "accru[ed]".  *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (N.Y 1993) (noting that the clock for the statute of limitations starts at the time of the alleged breach).  Thus, the statute of limitations ran six years later, on or about December 22, 2006.  Complainants did not commence this case until July 5, 2022, more than 15 years too late.

In their letter to the Court concerning this motion, Complainants claimed there is a basis for "the equitable tolling of the limitations period".  (Dkt. 67 at 3.)  Not so.  Although the Amended Complaint contends that Unilever "covertly" transferred the relevant IP (¶ 6) to "hide" them from the Board (¶ 92), these conclusory statements are belied by Complainants' own allegations and public records, which preclude any conclusion that Unilever hid the transfer from the Board or that the Board was unaware of it.  For example:

- The challenged transfer was done by Ben & Jerry's Holdings more than 20 years ago for more than $20 million, while the Board was in place (Ex. J § 1.1, 1.2);

- The agreement was executed under the direction of the management of Ben & Jerry's Holdings, and that entity was "the registered proprietor and beneficial owner of the [IP] and ha[d] full power to enter th[e] Agreement" (Ex. J § 2.1);

- Shortly after the transfer, Unilever N.V. (now UIP) licensed the transferred IP back to Ben & Jerry's (Wiktor Ex. R);

- Ben & Jerry's Holdings' transfer of the relevant trademarks to Unilever N.V. (now UIP) has been a matter of public record for more than two decades, through registrations in multiple jurisdictions (*see, e.g.*, Wiktor Exs. G-I; *see also* Wiktor Exs. J-N);

- In 2004, Ben & Jerry's and Unilever N.V. (now UIP) jointly entered into a license agreement with AQP, Mr. Zinger's company, given that Unilever N.V. had rights to the IP (Dkt. 36-9; *see also* Ex. E at 7, 9);

- In 2005, Ben & Jerry's Holdings merged into Ben & Jerry's, giving the Board further insight into the arrangement of which it now claims ignorance (¶ 36 n.10); and

- In 2013 and 2020, Ben & Jerry's and UIP amended their license agreement with AQP with no claim that UIP did not have the right to do so (Dkt. 36-9; *see also* Ex. E at 9).

Moreover, the Amended Complaint does not (and could not) allege that Unilever has been performing under the License Agreement for the last two decades, *e.g.*, there is no allegation that Unilever ever "manufacture[d], market[ed], distribut[ed], promot[ed]" or sold any products pursuant to the License Agreement (Ex. C); formed any of the referenced committees (Ex. C §§ 5(b), 7(b)); or paid any royalties that would have been due under the License Agreement (Ex. C § 6). The Board could not have been unaware of the transfer without being in flagrant breach of its own purported duties. To allow Complainants' claim to proceed would undermine the policy behind New York's statute of limitation, which is intended to "not only save litigants from defending stale claims, but also express [ ] a societal interest or public policy of giving repose to human affairs". *ACE Sec. Corp.*, 25 N.Y.3d at 593 (citations omitted). The claim is therefore barred by the statute of limitations.

**B.      Neither of the Unilever Defendants Could Have Breached the License Agreement.**

Even if Complainants' claim were not time barred, they fail adequately to allege a breach of the License Agreement.  (¶¶ 133-34.)  Complainants contend that "UIP and Unilever plc breached Section 11 of the License Agreement by participating in and/or causing the sale of Ben & Jerry's trademarks by B&J Holdings to UIP through execution of the Trademark Transfers in 2000 and 2001".  (¶ 133.)  By the time the transfers took place, however, the License Agreement had become moot or inoperative, with the Board's full knowledge.  (Wiktor Exs. P-Q.)  Thus, Complainants' allegation fly in the face of the Board's own actions.

But even if the License Agreement has not been mooted by Conopco's acquisition of Ben & Jerry's, Complainants' new claim is baseless for multiple reasons.  Section 11(a) of the License Agreement merely provides, in relevant part, that the Licensee (Unilever) shall not "do any act or thing which will materially impair the rights of Licensor (or its third-party licensor) in and to the Licensed Mark or any registrations thereof of which will materially impair or depreciate the value of the Licensed Mark".  (Ex. C § 11(a).)  The alleged transfers could not have put Unilever in breach of this provision, because:  (1) they were executed by Ben & Jerry's Holdings, not by Unilever; (2) Section 11(a) is a run-of-the-mill requirement that a licensee will not cause damage to the property it has been licensed to use, and Unilever was not acting as a licensee in ways that could harm the licensed mark—rather, it was acting in its capacity as the owner of Ben & Jerry's and its IP, for the purpose of optimizing the use, protection and financial impact of its newly-acquired IP; and (3) the transfers could not have materially impaired Ben & Jerry's alleged brand-integrity and social-mission rights (as Complainants allege), because they were separately protected under the Agreements, regardless of which entity held the IP.

What's more, even if Section 11(a) could be read to create a general right to stop a licensee who's also a parent from participating in and/or causing the sale of Ben & Jerry's trademarks (and it cannot), it did not in any way prohibit B&J Holdings from transferring or assigning (or Unilever from receiving) Ben & Jerry's rights in connection with a merger or sale of all or substantially all the assets of Ben & Jerry's. In fact, the License Agreement expressly allows for that. Section 21 permits "the rights and obligations" under the License Agreement to "be assigned in connection with a merger or sale of all or substantially all the assets of . . . Ben & Jerry's Homemade, Inc." (Ex. C § 21(a).) This is precisely what happened on August 3, 2000, upon the closing of the Conopco/Ben & Jerry's merger: Ben & Jerry's transferred its rights to Unilever, rendering the License Agreement (which was no longer needed) inapplicable.

Furthermore, the License Agreement separately and expressly provides that, upon a "Change of Control", "Licensor [the Ben & Jerry's entities] shall no longer have the right to approve or disapprove Licensee's actions". (Ex. C § 18(c)(i).) This would, of course, include the challenged Trademark Transfers in 2000 and 2001 (if, contrary to fact, they had been effected by Unilever, rather than Ben & Jerry's). Thus, even if Complainants could sue, even if their claim were not time barred, and even if the License Agreement had not been mooted by Unilever's purchase of Ben & Jerry's, they have no approval or disapproval rights to enforce.[7]

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed, with prejudice.

---

[7] Complainants also allege that Unilever breached Section 31 of the License Agreement. (¶ 135.) But Section 31, titled the "Entire Agreement" provision, is merely an integration clause. While it bears on the admissibility of parole evidence and whether modifications of the License agreement must be in writing, it is not a provision on which the Amended Complaint states an independent claim for breach of contract.

Dated: December 2, 2022

CRAVATH, SWAINE & MOORE, LLP

by            s/ *David R. Marriott*
David R. Marriott
Gary A. Bornstein
Yonatan Even

Worldwide Plaza
825 Eighth Avenue
New York, NY
(212) 474-1000
dmarriott@cravath.com
gbornstein@cravath.com
yeven@cravath.com

*Attorneys for Defendants Conopco, Inc.,*
*Unilever IP Holdings B.V. and Unilever*
*PLC*